**Jerome OWENS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49S00–0009–CR–546.

Supreme Court of Indiana.

Sept. 17, 2001.

Kevin C.C. Wild, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Convicted murderer Jerome Owens says the trial court should have excluded his confession because several hours before he confessed he voluntarily smoked a cigarette laced with embalming fluid, animal tranquilizer, ether and PCP. It is an impressive factual claim, but we affirm.

### Facts and Procedural History

Owens was the primary suspect in the July 6, 1998, shooting death of Linda Ferrell. He was eventually arrested on an unrelated charge in Louisville, Kentucky and brought to Indianapolis for questioning on June 22, 1999. He signed an advisement of rights and a police interviewer asked him to describe in writing his activities the night of Ferrell's death. Owens agreed and wrote a six-page account of his relationship with Ferrell in which he denied any involvement in her murder. The interviewer pointed out that the statement contained almost no information about the night of the murder. Owens then changed his story in a videotaped interview.

Owens explained that Ferrell, a former girlfriend, had once promised him money for a music recording business if he stayed with her. On the evening of June 22, 1998, he was living with another woman and facing eviction, and remembered Ferrell's offer of financial support. He borrowed a badly dented white Hyundai Excel that sometimes cut off when put in forward

gear, and went to visit Ferrell. He took his 25–caliber semiautomatic handgun, which he kept cocked at all times.

Ferrell answered the door, but blocked Owens' entrance. She refused Owens' request for money and said that she would not take him back. Angered, Owens shot Ferrell once in the face, killing her. As Ferrell fell backward Owens fled, backing the Excel out of the apartment complex at high speed. Ferrell's downstairs neighbor heard the gunshot and saw the beat-up Excel backing rapidly down the street.

Before his trial, Owens sought to suppress his confession, claiming that he was under the influence of drugs that rendered his statement involuntary. He testified that about an hour and a half before he arrived in Indianapolis, he voluntarily smoked a cigarette laced with embalming fluid, animal tranquilizer, ether and PCP acquired from some unidentified person at the Louisville jail. The drugs did not affect his ability to write but slowed down his thinking and actions and made him stupid, nonchalant, and willing to say basically yeah to whatever for about five to six hours, during which time he confessed.[1] (R. at 187, 199, 307–08, 327.) He offered no corroborating evidence for this story.

The trial court denied Owens' motion to suppress. A jury found Owens guilty and the judge sentenced him to fifty-five years for murder and a concurrent 365 days for unlicensed handgun possession. In this direct appeal, he claims that the trial court should have excluded his confession because it was not voluntarily and intelligently given.[2]

## Voluntary Intoxication and Confessions

▬▬ The touchstone for admissibility of confessions is whether the defendant was compelled ... to be a witness against himself. U.S. Const. amend. V. This inquiry focuses on whether there has been overreaching or misconduct by the police; there is no Fifth Amendment right to testify only when well advised or when it is in the defendant's best interest. *See Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). A confession may be inadmissible if the defendant was so intoxicated or impaired as to be unconscious of what he was doing, or in a state of mania. *Luckhart v. State*, 736 N.E.2d 227, 231 (Ind.2000); *Houchin v. State*, 581 N.E.2d 1228, 1231 (Ind.1991). A lesser degree of intoxication goes only to the weight the finder of fact gives to the confession, not its admissibility.[3] *Brooks v. State*, 683 N.E.2d 574, 576 (Ind.1997) (confession by defendant claiming to have been under the influence of alcohol and marijuana properly admitted). In reviewing the trial court's ruling, we consider only the evidence supporting that decision plus any unrefuted evidence in the defendant's favor. *Houchin*, 581 N.E.2d at 1231.

### The Tale of the Tape

▬▬ The State rebutted Owens' claim of a drug-related impairment with his own

---

1. Owens also claims that the drugs made him paranoid, which seems at odds with his claim that they made him excessively cooperative. (R. at 187.)

2. In addition to claiming that he was under the influence of drugs, Owens says his advisement of rights was stale by the time he confessed. (Appellant's Br. at 9.) However, the videotape clearly shows the police interviewer reviewing the previously signed advisement with Owens just before Owens began telling what happened the night of the murder. (R. at 304, State's Exh. 12.)

Owens also says he is of limited intelligence and suffering from mental health illness. (R. at 67; Appellant's Br. at 9.) He offers no supporting evidence, so this claim is similarly unavailing.

3. Owens chose to testify at trial, and told the jury about the tainted cigarette. (R. at 327–30.)

videotaped statement.[4] Throughout his confession, Owens talked, gestured and reacted to questions at a normal pace. (R. at 304, State's Exh. 12.) He appeared calm but alert, and was responsive to inquiries. (R. at 304, State's Exh. 12); *see Brooks,* 683 N.E.2d at 576 (defendant appeared relaxed, alert and responsive in videotaped confession). He spoke distinctly and seemed oriented to his surroundings. (R. at 304, State's Exh. 12); *see Lambert v. State,* 643 N.E.2d 349, 353 (Ind.1994)(defendant was oriented as to time and place and did not slur his words). He told his story in a logical sequence. (R. at 304, State's Exh. 12); *see Lambert,* 643 N.E.2d at 353 (defendant recounted events in logical order).

Owens also demonstrated physical coordination as he sipped a soda, smoked several cigarettes, and initialed his handwritten statement at various places upon request. (R. at 304, State's Exh. 12); *see Houchin,* 581 N.E.2d at 1232 (defendant showed coordination by ability to smoke cigarettes). He provided a number of details such as what the victim was wearing (a nightgown) and not wearing (her eyeglasses), where she stood and how she fell, and the nature and location of her fatal wound. (R. at 304, State's Exh. 12.) He displayed awareness of the fix he was in by asking the interviewer at the conclusion of his statement whether even if I would have lied, you still would have known ... ? (R. at 304, State's Exh. 12); *see Houchin,* 581 N.E.2d at 1232 (defendant displayed awareness of his situation by asking about his likely sentence).

In short, the videotape does not show that Owens was impaired at all, and there is no particular claim of compulsion. The trial court did not err in denying his motion to suppress.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

4. The State verified that Owens was free of the influence of drugs at the suppression hearing, to allow the trial judge to compare the real Owens' demeanor to the image on the tape. (R. at 203–04.)